**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SARKHAN NABIYEV, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OPEN VISION ENGINEERING, INC., ACCEL MANAGEMENT CO. LLC, Y COMBINATOR LLC, GUILLERMO RAUCH, MATEUSZ STANISZEWSKI, KAZ NEJATIAN,<br><br>Defendants. | Case No. 3:26-cv-8693-JD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Sarkhan Nabiyev ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant Open Vision Engineering, Inc., doing business as Pocket AI ("Pocket AI"), and its funders, Defendants Accel, Y Combinator, Guillermo Rauch, Mateusz Staniszewski, and Kaz Nejatian (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action against Pocket AI for knowingly selling a wiretapping device whose primary use case is illegal in a dozen states, including California. This action is also against Pocket AI's venture capital and angel investors for knowingly funding this unlawful manufacturing and distribution.

2. When it comes to call recording, California—like Florida, Illinois, and a number of others—is a "two-party consent" state. *People v. Drennan*, 84 Cal. App. 4th 1349, 1358 (2000). In other words, in those places, it would be unlawful for companies like Pocket AI or for users of Pocket AI's device to "intentionally and without the *consent of all parties* to a confidential communication, uses an electronic amplifying or recording device to … record the confidential communication." California Penal Code § 632. And a communication is confidential simply "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777 (2002). That said, complying with these call-recording laws is incredibly easy. All Pocket AI needs to do is "adequately advise[] all parties to a telephone call, at the outset of the conversation, of its intent to record the call." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117–18 (2006). Pocket AI, however, fails to do so.

3. Perhaps because of these state wiretapping laws, most smartphone manufacturers prohibit their recording applications from being used while a call is ongoing. For example, Apple iPhones all come with a voice memos app pre-installed, which allows one to record one's own voice. *See* Figure 1, next page. However, when a phone call is ongoing, the voice memo app disables the recording feature. *See* Figure 2, next page.

**Figure 1**




**Figure 2**




4. Yet on its main page of its Website, Pocket AI markets its device as a tool to circumvent this prohibition. *See* Figure 3. The device contains a magnetic strip which attaches to the back of a smartphone and allows it to record calls by sensing the vibrations of the phone itself. Pocket AI also advertises its device as giving an "unfair advantage" and rhetorically asks whether it is "cheating." *See* Figure 4, next page.

**Figure 3**



**Figure 4**




5. Pocket AI even airs ads featuring Rick Hoffman (famous for playing the lawyer Louis Litt in the dramedy *Suits*), recording a phone call with opposing counsel. *See* https://www.youtube.com/watch?v=IkONKeek_Dg. He notes that "Pocket got me every word," "flag[ged] three contradictions" in opposing counsel's statement, and helped him win in court.

**Figure 5**



**Figure 6**




6. However, in the fictional show *Suits*, Rick plays a lawyer in *New York City*—where the law only requires "one party's consent to the taping of a telephone conversation." *People v. Tabora*, 527 N.Y.S.2d 36, 39 (1988). What Pocket AI *fails to tell* consumers is that in a dozen two-party consent states, it would be a crime for a lawyer to unlawfully record opposing counsel's call without their consent. *See, e.g.*, Cal. Penal Code § 632; Fla. Stat. Ann. § 934.03, 720 Ill. Compiled Stat. § 5/14-2; 18 Pa. Cons. Stat. § 5703; Wash. Rev. Code § 9.73.030; Mass. Gen. Laws Ch. 272, § 99; Conn. Gen. Stat. § 52-570d; Md. CJP. § 10-402; Mont. Code § 45-8-213; N.H. Rev. Stat. § 570-A:2; Nev. Rev. Stat. § 200.620; Or. Rev. Stat. § 165.540.

7. Indeed, nowhere on its Website, prior to accepting payment for its devices, does Pocket AI ever affirmatively disclose to consumers that the primary utility of its device (to surreptitiously record phone calls) is unlawful in a dozen states. This is a material omission which, had it been adequately disclosed to consumers in those states, would cause them not to buy Pocket AI's devices in the first place.

8. Plaintiff is one such consumer. He, a California resident, bought a Pocket device on August 4, 2026, mistakenly believing based on Defendant Pocket AI's representations on its Website and advertising that it was legal to surreptitiously record calls in his jurisdiction and to share potentially private facts with Pocket AI's third parties. Shortly thereafter—*before* using his device to record any calls without others' consent but *after* using the device to record his own notes—he

discovered that it would be unlawful for him to record any such calls without all parties' consent. Had he known this material fact prior to buying the Pocket AI device, he would never have spent over a hundred dollars to buy it in the first place.

9. As a result, Plaintiff brings this action on behalf of himself, and a multi-state class of consumers who either had (1) their phone calls recorded by Pocket AI without their consent or (2) unwittingly purchased Pocket AI's device not knowing it was illegal to use in their jurisdiction, and to recover statutory damages, injunctive relief, and other appropriate remedies.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are more than 100 members of the putative Classes; and at least one member of the Class is a citizen of a state different from Defendants.

11. This Court has personal jurisdiction over Defendant Pocket AI, because it is headquartered in this District. The remaining Defendants all have specific personal jurisdiction by entering into contractual agreements with Pocket AI to fund its unlawful manufacturing, sale, and distribution of its eavesdropping devices from this District. Additionally, Defendants Accel Management Co. LLC and Y Combinator LLC are subject to general personal jurisdiction because they are likewise headquartered in this District and otherwise at home. *Cox v. CoinMarketCap OPCO, LLC*, 112 F.4th 822, 834 (9th Cir. 2024). And Defendants Guillermo Rauch and Kaz Nejatian are likewise citizens of California, subject to its jurisdiction.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because most of the Defendants reside and are headquartered in this District, and most of the acts and omissions giving rise this action occurred in this District.

## THE PARTIES

***Plaintiff***

13. Plaintiff Sarkhan Nabiyev is an adult citizen of the State of California who resides in Tarzana, California.

14. Plaintiff purchased a Pocket AI device on August 4, 2026, and received it at his home approximately a week later. Around the time he finally received his device and used it to record his own notes and thoughts, in response to attorney advertising, he retained counsel and discovered that it would be unlawful for him to record any such calls without all parties' consent in California. Had he known this fact, he would not have purchased his Pocket AI device at all.

***Defendants***

15. Defendant Open Vision Engineering, Inc. is a Delaware corporation with its principal place of business and headquarters in 2530 Sacramento Street, San Francisco, California. Defendant Open Vision Engineering, Inc. does business as Pocket AI, and owns, operates, and controls the Website, https://heypocket.com, through which it markets and sells its Pocket AI device to consumers throughout California and the United States.

16. Defendant Accel Management Co. LLC ("Accel") is a Delaware company with its principal place of business and headquarters in 500 University Ave, Palo Alto, California. Accel is a venture capital firm funding and supporting Pocket AI's manufacturing, advertising, and selling of the Pocket AI device to consumers.

17. Defendant Y Combinator LLC ("Y Combinator") is a Delaware company with its principal place of business and headquarters in 560 20th St, San Francisco, California. Y Combinator is a venture capital firm funding and supporting Pocket AI's manufacturing, advertising, and selling of the Pocket AI device to consumers.

18. Defendant Guillermo Rauch is an adult citizen of the State of California and resides in San Francisco, California. Rauch is the CEO and co-founder of Vercel Inc. and is an angel investor supporting Pocket AI's manufacturing, advertising, and selling of the Pocket AI device to consumers.

19. Defendant Mateusz Staniszewski is an adult citizen of Poland and resides in London, United Kingdom. Staniszewski is the CEO and co-founder of Eleven Labs Inc. and is an angel investor supporting Pocket AI's manufacturing, advertising, and selling of the Pocket AI device to consumers.

20. Defendant Kaz Nejatian is an adult citizen of the State of California and resides in Menlo Park, California. Nejatian is the CEO and President of Opendoor Technologies Inc. and is an

angel investor supporting Pocket AI's manufacturing, advertising, and selling of the Pocket AI device to consumers.

## FACTUAL ALLEGATIONS

21. Pocket AI sells a device it calls a "personal AI assistant." It is a magnetic device that attaches to the back of smartphones.

**Figure 7**




22. According to Defendant Pocket AI, Pocket is a small AI device that allows users "to stay present, move faster, and capture what matters."[1] Defendant Pocket AI markets the device with

[1] POCKET AI, Main Page, https://heypocket.com/pages/pocket?utm_source=google&utm_medium=search&utm_campaign=23709248587&utm_adgroup=&utm_term=&utm_content=&tw_source=google&tw_adid=&tw_campaign=23709248587&tw_kwdid=&gad_source=1&gad_campaignid=23699233581&gbraid=0AAAABAF0LU3J-UPDPi6eFH8leHYFRxNYm&gclid=CjwKCAjwhZDUBhBGEiwAbi5bjgWMNEGxtIw8rQ-4tf_c11N1BpUUrNFhXkImzv1mUbOTftpEdI8NNBoCAEMQAvD_BwE (last accessed, Aug. 18, 2026).

the taglines "Capture your mind in motion," and "Your personal AI assistant," and promises that the device will let consumers "Reflect. Recall. Take action without lifting a finger."[2]

23. Central to the device's marketing is its ability to record and transcribe telephone calls. In its FAQ, Defendant Pocket AI advertises that "Pocket includes … *a contact microphone for private phone calls when it's placed on the back of your phone*."[3] *See* Figure 8.

**Figure 8**




24. This magnetic recording device "Attaches Like Magic. Records Like Memory."[4] Defendant Pocket AI instructs consumers simply to "Snap. Talk. Done."—that is, to "Snap[] on with MagSafe" and "Press the side button" so that "Pocket starts recording instantly."[5]

25. This device is designed to capture telephone calls even where a smartphone's own operating system would otherwise prevent it. As alleged above, the device contains a contact microphone that records a phone call by sensing the vibrations of the phone itself, thereby

---

[2] *Id.*

[3] *Id.* (emphasis added).

[4] *Id.*

[5] *Id.*

circumventing the recording prohibitions that smartphone manufacturers such as Apple build into their devices. *See* Figures 1–3.

26. Pocket AI's own advertising confirms that the device's primary purpose is to secretly record the communications of others. Defendant Pocket AI markets the device as conferring an "unfair advantage" and rhetorically asks prospective purchasers, "IS THIS CHEATING?" *See* Figures 3–4. In one advertisement, Pocket AI depicts a lawyer surreptitiously recording opposing counsel during a live telephone negotiation, boasting that "Pocket got me every word" and "flag[ged] three contradictions" in opposing counsel's statements. *See* Figures 5–6. In another video ad, Pocket AI depicts two coworkers having a conversation where the first co-worker, not knowing he was being recorded, asks the other mid-conversation "What are you doing? You're not taking notes?" *See* https://www.youtube.com/watch?v=sYRwYTNOdWo. The second co-worker, pretending to be a savant, smiles and says "Nope. Go on." Later, he turns to directly face the camera as an aside and tells the audience, in a bit of dramatic irony, "and because Pocket is taking notes, I can actually pay attention." The first co-worker, still unaware he was being recorded, asks "Who are you talking to?"

**Figure 9**



**Figure 10**




**Figure 11**




27. In another advertisement, a father is arguing over the phone with a customer service representative. When the representative states that she "never agreed to a refund," the camera pans to his son. The son, who had been recording the conversation *without ever notifying either his father*

*or the customer service representative*, proceeds to catch the representative in a "gotcha" moment, quoting her "word for word" agreeing to refund, and even showing off a timestamped transcript of the conversation. *See* Figures 12-13.

**Figure 12**




**Figure 13**



28. Moreover, many public comments to Pocket AI's Instagram ads show many regular individuals raising concerns about the legality of its device. For example, in the father-son ad, two of the three most engaged with comments featured users questioning "[h]ow legal is that?" and "[w]hat are the privacy implications?" *See* Figure 14, below.

**Figure 14**




29. That Pocket AI continued to market its product in the same way after receiving these and various other comments shows that it intended to market the device being used unlawfully.

30. Worse still, Pocket AI's own advertising satirizes these very same privacy concerns. One advertisement depicts a fictional judge stating: "Mr. Pocket, the comments have spoken. You stand accused of wiretapping, data theft, and building a device no one asked for." *See* Figure 15.

**Figure 15**




**Pocket AI Shares Users' Private Conversations With Several AI Companies**

31. Pocket AI does not keep the calls and conversations it records to itself. To transform what a user "say[s] and hear[s]" into "clear notes, action items, and search," Defendant Pocket AI transmits the contents of the recordings—including the words of every other participant to a recorded call—to third-party artificial intelligence companies for processing.[6]

32. Defendant Pocket AI states on its Website that the device is "Powered by GPT-5, Claude, Gemini, and more," and that "Pocket is model-agnostic, always using the best tool for the

[6] *Id.*

thought."[7] The models are developed and operated by OpenAI, Anthropic, and Google (the "Third Parties").

33. When a user uses the device, whether to record a conversation with another person or merely for individual note-taking, Pocket AI simultaneously sends a transcript of that conversation to the Third Parties. In the advertisement of a Pocket representative in the fictional courtroom, the representative explains his "favorite" feature: "When I open the app, Pocket gives me full notes for everything I record. It knows who said what, creates over 100 types of summaries, and action items are pulled out automatically. It even has a mind-map of all my to-dos from every meeting in one place." *See* Figure 16.

**Figure 16**




34. Critically, Pocket's features work "automatically," meaning that the transcript of every conversation is sent to all the Third Parties simultaneously without the user selecting which AI agent to use to generate the summary, identify to-dos, or create the mind map. In other words, even if a user intends for one of the Third Parties to receive a transcript during a recording for evaluation or summarization, a user does not intend the simultaneous interception of the transcript during the conversation by *all* the Third Parties.

---

[7] *Id.*

35. Moreover, in the advertisement with the father and son, the son explains that Pocket's summaries come in various templates automatically: "A doctor gets a doctor summary, a lawyer gets a lawyer summary, and a student … gets a student summary." *See* Figure 17. Because "Pocket is model-agnostic [and] always us[es] the best tool for the thought," every transcript is simultaneously sent for evaluation to all AI models.

**Figure 17**




36. Further, the Third Parties read or attempt to read the content of the transmission (the transcript of the recording) as the point of the device is to "get crisp summaries tailored precisely to your conversations" and evaluate the content of the recordings to "identif[y] clear action items." *See*

Figure 18. Doing so necessitates reading the contents of the transmission; after all, Pocket AI's third party AI models cannot identify contradictions, create action items, update a mind map, or draft a follow-up email (as seen in the father and son advertisement) without evaluating the content of the recording. In Pocket AI's own words, "Pocket doesn't just record, it understands." *See* Figure 18.

**Figure 18**




37. In short, Defendants knowingly aid the Third Parties' simultaneous interception of the contents of the recorded communication between the consumer and the Pocket AI device. These AI models then, without being asked by the user to review or evaluate the content after it has been recorded, read the transcript automatically.

38. Thus, when Plaintiff used the device to record his own notes, the transcript of his statements to the Pocket AI device was simultaneously sent to all the Third Parties without his consent to be summarized, analyzed, evaluated, and used by the Third Parties to train their AI models.

39. Yet, Defendant Pocket AI represents the opposite to users. On the Main Page of its Website, Pocket AI misleadingly advertises that "[y]our data is never sold or shared," that Pocket is "[b]uilt with privacy at its core, so your conversations stay yours," that "[o]nly your Pocket account can access them."[8] Pocket AI's Privacy Policy, however, tells a different story. The Policy admits users' conversations are "shared" with these third-party AI companies for "transcription/AI

---

[8] Pocket AI, Privacy Policy, https://heypocket.com/pages/privacy (last accessed Aug. 18, 2026).

processing."[9] The Privacy Policy never clarifies whether users' private phone calls will later be used by those same AI companies for model training.[10] Worse still, Pocket AI admits that, even if a user "request[s] that we delete personal information," "content previously shared with others or with third-party integrations may persist with those recipients."[11]

40. As a result, the confidential communications that Pocket AI records—including the communications of non-consenting third parties who never agreed to be recorded—are disclosed by Defendants to OpenAI, Anthropic, Google, and any other "AI" company Pocket AI sees fit. As noted, "Pocket is model-agnostic." So while Pocket AI says it "respects your [sic] privacy and is committed to protecting it,"[12] in reality, it will freely change or mix-and-match which AI company or companies it immediately shares users' private conversations with.

41. Defendants Accel, Y Combinator, Rauch, Staniszewski, and Nejatian were aware of the Pocket AI device's design, operation, transmission, and processing before they began funding Defendant Pocket AI.

42. Defendants closed their $11,000,000 funding deal on June 29, 2026.[13] Yet, well before then, Defendant Pocket AI openly advertised the unlawful features discussed herein: the vibrational microphone allowing for the recording of phone calls and the use of artificial intelligence baked into the device to analyze the content of any recording. After all, those are the selling points of the product.

43. For example, since at least June 1, 2025, Defendant Pocket AI has represented the call recording and AI features discussed herein. Specifically, the June 2025 product webpage

---

[9] *Id.*

[10] *See id.*

[11] *Id.*

[12] *Id.*

[13] Sofia Chesnokova, *Accel backs Pocket's $11M raise, as the AI hardware startup turns a viral launch into $27M ARR*, Tech Funding News (June 29, 2026), https://techfundingnews.com/pocket-11m-accel-ai-hardware-27m-arr/.

explained the microphone "Captures Phone Calls Without Speaker," that "Pocket doesn't just record, it understands," and the device is "model-agnostic, always using the best tool for the thought."[14]

44. Defendants Accel, Y Combinator, Rauch, Staniszewski, and Nejatian were aware of these features and representations. For example, the same June 1, 2025 webpage states that Defendant "Guillermo Rauch" had pre-ordered the device.[15]

45. In addition, leading up to the funding deal, Defendant Pocket AI attended Y Combinator's "YC Program," a three-month program leading up to a Demo Day where startups hope to obtain funding from investors such as Defendants Accel, Y Combinator, Rauch, Staniszewski, and Nejatian. As part of this program, Defendant Pocket AI posted a "Launch" webpage on Defendant Y Combinator's website. This webpage, posted in March 2026 (before the June 29, 2026 close of deal), explicitly stated the following: The device's "contact mic can capture and summarize both sides of a phone call. No speaker phone required. Your doctor calls with test results? Someone rattles off an interesting quote? Your lawyer explains something complicated and fast? **It's all in Pocket. Word for word.**"[16] This page goes on further, stating that "the full transcript [is waiting for you in the Pocket app]. Pocket tacks who said what. You get automatically-generated summaries."[17]

46. Moreover, Defendant Pocket AI had been running advertisements making substantially similar representations to those referenced throughout this complaint prior to the funding deal. Defendant Pocket AI posted the advertisement shown in Figure 16 to YouTube on March 4, 2026 ("When I open the app, Pocket gives me full notes for everything I record. It knows who said what, creates over 100 types of summaries, and action items are pulled out automatically. It even has a mind-map of all my to-dos from every meeting in one place.").[18] In an earlier video

---

[14] Wayback Machine, *June 01, 2025 capture for https://heypocket.com/*, Pocket AI (June 1, 2025), https://web.archive.org/web/20250601065812/https://heypocket.com/.

[15] *Id.*

[16] Akshay Narisetti, *Pocket – Your notetaker for real world meetings*, Y Combinator (March 3, 2026), https://www.ycombinator.com/launches/PaX-pocket-your-notetaker-for-real-world-meetings (emphasis in original).

[17] *Id.*

[18] Pocket AI, *Pocket – Take Notes in the Real World*, YouTube (March 4, 2026), https://www.youtube.com/watch?v=NuzUI3uhx94.

posted to its YouTube channel on December 18, 2024, Defendant Pocket AI advertised how the device is “an AI powered recording device,” captures “Live Conversations [and] Phone Calls,” and uses generative AI to create “action items [and] summaries” with “1000s of templates.”[19]

47. Defendants Accel, Y Combinator, Rauch, Staniszewski, and Nejatian were aware of the device’s features and design when they decided to fund Defendant Pocket AI and have remained aware throughout the period of their continued funding. Yet, for these Defendants, the profits earned through misleading consumers and the development and advertising of an unlawful wiretapping product are worth the legal ramifications—it is a calculated risk where the profits outweigh the corporate speeding ticket.

**<u>Surreptitiously Recording Calls Is Unlawful in a Dozen Two-Party-Consent States</u>**

48. Although some states permit the recording of a telephone call with the consent of just one party to the call, a dozen states require the consent of all parties before a call may lawfully be recorded. In each of these “two-party” or “all-party” consent states, a person who uses a device like Pocket AI’s to secretly record a call without the consent of every party commits a crime.

49. *California.* California law makes it unlawful to, “intentionally and without the consent of all parties to a confidential communication, use[] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.” Cal. Penal Code § 632(a). A “confidential communication” includes “any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto.” *Id.* § 632(c).

50. *Connecticut.* Connecticut prohibits any person from “us[ing] any instrument, device or equipment to record an oral private telephonic communication unless the use of such instrument, device or equipment (1) is preceded by consent of all parties to the communication and a verbal notification indicating such consent is recorded at the beginning and is part of the communication by the recording party.” Conn. Gen. Stat. § 52-570d(a).

---

[19] Pocket AI, *Introducing Pocket*, YouTube (December 18, 2024), https://www.youtube.com/watch?v=XupW9pi11MI.

51. *Florida.* Florida makes it unlawful to "intentionally intercept[] … any wire, oral, or electronic communication," Fla. Stat. § 934.03(1)(a), and permits such interception only "when all of the parties to the communication have given prior consent to such interception," *id.* § 934.03(2)(d).

52. *Illinois.* Illinois makes it a crime to "[u]se[] an eavesdropping device, in a surreptitious manner, for the purpose of … recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation." 720 Ill. Comp. Stat. 5/14-2(a)(2).

53. *Maryland.* Maryland makes it unlawful to "[w]ilfully intercept … any wire, oral, or electronic communication," Md. Code, Cts. & Jud. Proc. § 10-402(a)(1), and permits interception by a party to the communication only "where all of the parties to the communication have given prior consent to the interception," *id.* § 10-402(c)(3).

54. *Massachusetts.* Massachusetts prohibits the "interception" of any wire or oral communication, which it defines as "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication." Mass. Gen. Laws ch. 272, § 99(B)(4).

55. *Montana.* Montana makes it an offense against a person's privacy in communications to "record[] or cause[] to be recorded a conversation by use of a hidden electronic or mechanical device that reproduces a human conversation without the knowledge of all parties to the conversation." Mont. Code Ann. § 45-8-213(1)(c).

56. *Nevada.* Nevada makes it "unlawful for any person to intercept or attempt to intercept any wire communication," Nev. Rev. Stat. § 200.620(1), and the Nevada Supreme Court has construed this provision to require the consent of the other party to a telephone conversation, *see Lane v. Allstate Ins. Co.*, 114 Nev. 1176, 1179 (1998).

57. *New Hampshire.* New Hampshire makes a person "guilty of a class B felony if, except as otherwise specifically provided in this chapter or without the consent of all parties to the communication, the person … [w]ilfully intercepts … any telecommunication or oral communication." N.H. Rev. Stat. Ann. § 570-A:2, I(a).

58. *Oregon.* Oregon makes it unlawful to "[o]btain or attempt to obtain the whole or any part of a conversation by means of any device … if not all participants in the conversation are specifically informed that their conversation is being obtained." Or. Rev. Stat. § 165.540(1)(c).

59. *Pennsylvania.* Pennsylvania makes it a felony to "intentionally intercept[] … any wire, electronic or oral communication," 18 Pa. Cons. Stat. § 5703(1), and permits interception only "where all parties to the communication have given prior consent to such interception," *id.* § 5704(4).

60. *Washington.* Washington makes it "unlawful for any … corporation … to intercept, or record any … [p]rivate communication transmitted by telephone … without first obtaining the consent of all the participants in the communication." Wash. Rev. Code § 9.73.030(1)(a).

**Pocket AI Conceals the Illegality of Its Device From Consumers**

61. Despite designing, marketing, and selling a device whose primary use is unlawful in the twelve states identified above, Pocket AI nowhere discloses this fact to consumers. Nowhere in its advertising, on its Website, or at the point of sale does Defendant Pocket AI inform consumers that using its device to secretly record a call without the consent of all parties is a crime in a dozen states.

62. Defendant Pocket AI's advertising affirmatively implies that using the device to secretly record calls is lawful. Defendants market the device to lawyers and other professionals as a tool for secretly recording calls—including calls with opposing counsel—and represents that the device offers an "unfair advantage," without ever disclosing that its use in this manner is unlawful in a dozen states.

63. The lawfulness of the device's primary advertised use is material. A reasonable consumer, in deciding to make a purchase, would want to know whether using the device as intended is a crime in that consumer's state. Had Defendants disclosed this fact, reasonable consumers would not have purchased the device, or would not have paid as much as they did.

64. Plaintiff saw and relied on Defendant Pocket AI's representations before purchasing his device. Based on Defendant Pocket AI's representations on its Website and in its advertising, Plaintiff understood that the device was lawful to use to record his calls. He would not have

purchased the device had Pocket AI disclosed that using it to secretly record calls without all parties' consent is unlawful in California.

65. A disclosure of the lawfulness of unconsented recordings also is entirely absent at the digital point of sale, either in the consumers' cart after they select their devices for purchase, or the checkout screen, *see* Figures 19-20 (computer browser) and 21-24 (smartphone), next pages.

**Figure 19**



**Figure 20**


Pocket
Express checkout
shop
PayPal
G Pay
OR
Contact
Sign in
Email
Keep me up to date on my order
Delivery
Country/Region
United States
First name (optional)
Last name
Address
Apartment, suite, etc. (optional)
City
State
California
ZIP code
Phone number (optional)
Shipping method
Enter your shipping address to view available shipping methods.
Payment
All transactions are secure and encrypted.
Credit card
Card number
Expiration date (MM / YY)
Security code
Name on card
Use shipping address as billing address
Shop Pay • Pay in full or in installments
shop
PayPal
PayPal
Save my information for a faster checkout
By paying, you agree to create a Shop account subject to Shop's Terms and Privacy Policy
Not now
By clicking "Pay now", you agree to our Terms of Sale, Terms of Use and Privacy Policy.
Pay now
Refund policy Shipping Privacy policy Terms of service Cancellations
Contact Cookies
Pocket - Personal AI Assistant (Launch Special)
Sierra Blue
$129.00
Discount code
Apply
Subtotal
$129.00
Shipping
Enter shipping address
Total
USD $129.00
Why choose Pocket
Unlimited
Minutes
Core Features
for Life
Free
30-Day Returns
1-Year
Warranty
Lifetime
Customer Support
Fast
Shipping
Trusted by 160,000+ Users Globally

## Figure 21




## Figure 22




## Figure 23




## Figure 24



66. To be sure, Defendants are likely to argue Pocket AI's Terms of Sale and Terms of Use disclose that "Features that involve audio capture or recording are subject to recording, wiretap, privacy, and consent laws. You are solely responsible for obtaining any required consents or notices and for complying with all applicable laws."[20] However, these disclosures are insufficient for several different reasons. First, "[a] reasonable consumer could rely on [defendant]'s conduct marketing and selling the [] items and, reasonably, be unaware of the 'small print' equivalent of the dense, lengthy terms of use." *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1263 (N.D. Cal. 2022).

67. Nor could consumers be charged with inquiry notice of Defendant Pocket AI's terms. In both the web browser and smartphone screens, the hyperlinks to these terms appear at the bottom of screen. Because these links are far below the express checkout buttons, consumers like Plaintiff, who clicked on one of the express Checkout options, would have never even seen the hyperlinks (Plaintiff purchased his Pocket device using the Apple Pay express checkout button on his smartphone browser).

68. Moreover, even for consumers who did see the hyperlinks because they scrolled down to the Pay Now button, those links were not reasonably conspicuous because they appeared in tiny gray font that was smaller and lighter than anything else on the screen. In the visual hierarchy of all the other colorful items on the page, Pocket AI's terms were the least conspicuous item on the page.

## CLASS ALLEGATIONS

69. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of himself and seeks to represent a False Advertising class (the "False Advertising Class") defined as follows:

> All persons in California, Connecticut, Florida, Illinois, Maryland, Massachusetts, Montana, Nevada, New Hampshire, Oregon, Pennsylvania, and Washington who purchased a Pocket AI device during the applicable limitations period.

70. Plaintiff also seeks to represent a Wiretapped class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) defined as follows (the "Wiretapped Class"):

---

[20] Pocket AI, Terms of Sale, https://heypocket.com/pages/terms-of-sale; Terms of Use, https://heypocket.com/pages/terms (both last accessed Aug. 18, 2026).

All persons in California who used the Pocket AI device to record any of their own statements or thoughts during the relevant statute of limitations period.

71. The False Advertising Class and the Wiretapped Class are collectively referred to as the "Classes." Excluded from the Classes are: (a) any Judge presiding over this action and members of their families; (b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest (including current and former employees, officers, and directors); (c) persons who properly execute and file a timely request for exclusion from the Classes; (d) persons whose claims have been finally adjudicated on the merits or otherwise released; (e) Plaintiff's counsel and Defendants' counsel; and (f) the legal representatives, successors, and assigns of any such excluded persons.

72. Plaintiff reserves the right to modify the Class definitions, including through the use of additional subclasses, based on further investigation and discovery.

73. Numerosity (Fed. R. Civ. P. 23(a)(1)). The Classes are so numerous that joinder of all members is impracticable. Defendant Pocket AI markets and sells its products to consumers throughout the United States.

74. Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)). Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. These common questions include, without limitation:

a. whether Defendants' device is "primarily or exclusively designed or intended for eavesdropping upon the communication of another" within the meaning of Cal. Penal Code § 635;

b. whether Defendants manufactured, assembled, sold, offered for sale, advertised for sale, or furnished the device in violation of Cal. Penal Code § 635;

c. whether the Third Parties, as aided by Defendants, "willfully and without the consent of all parties" intercepted, read, or attempt to read or learn the "contents" of any "communication" between a user and the device within the meaning of Cal. Penal Code § 631(a);

d. whether Defendants recorded, or enabled the recording of, Class Members' confidential communications without the consent of all parties;

e. whether Defendants shared the contents of recorded communications with third parties, including OpenAI, Anthropic, and Google;

f. whether Defendant Pocket AI failed to disclose that the device's primary advertised use is unlawful in a dozen states;

g. whether these omissions were material and misleading in violation of Cal. Bus. & Prof. Code § 17500; and

h. whether Plaintiff and Class Members are entitled to statutory damages, restitution, injunctive relief, and other relief.

75. Typicality (Fed. R. Civ. P. 23(a)(3)). Plaintiff's claims are typical of the claims of the Classes because Plaintiff purchased a Pocket AI device. Plaintiff's claims arise from the same conduct and are based on the same legal theories as the claims of the Class Members.

76. Adequacy (Fed. R. Civ. P. 23(a)(4)). Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex consumer privacy class actions, including CIPA actions. Plaintiff's interests do not conflict with the interests of the Classes he seeks to represent, and Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Classes.

77. Superiority (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class Members are relatively modest compared to the burden and expense that would be required to litigate their claims individually against well-resourced defendants. Individualized litigation would also create the risk of inconsistent or contradictory judgments. A class action, by contrast, permits the consistent adjudication of the claims in a single forum, conserving the resources of the parties and of the judicial system.

78. Rule 23(b)(2). Defendants have acted on grounds that apply generally to the Classes, such that final injunctive relief and corresponding declaratory relief are appropriate with respect to the Classes as a whole.

## CLAIMS FOR RELIEF

## COUNT I
**Violation of the California Invasion of Privacy Act**
**Cal. Penal Code § 631(a)**

79. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

80. Plaintiff brings this claim individually and on behalf of the Wiretapped Class.

81. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

82. CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a)

applies to Internet communications."). As such, Defendant Pocket AI's device and the sharing of data between Defendant Pocket AI's device and the Third Parties are subject to CIPA § 631(a).

83. The Third Parties' AI models are each a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

84. Each of the Third Parties is a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, the Third Parties have the capability to use the wiretapped information for their own purposes. Accordingly, Anthropic, Google, and OpenAI were third parties to any communication between Plaintiff and Wiretapped Class Members, on the one hand, and Defendant Pocket AI, on the other. *Id*. at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

85. At all relevant times, the Third Parties willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Wiretapped Class Members, on the one hand, and Defendant Pocket AI, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

86. At all relevant times, the Third Parties used or attempted to use the communications intercepted for their own purposes.

87. At all relevant times, Defendant Pocket AI aided, agreed with, employed, permitted, or otherwise enabled the Third Parties to wiretap Plaintiff and Class Members using the Third Parties' technologies and to accomplish the wrongful conduct at issue here.

88. Plaintiff and Class Members did not provide their prior consent to the Third Parties' intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and the Wiretapped Class Members' electronic communications. At no point does Pocket AI ever provide inquiry notice of its practices or policies to any prospective purchasers of its products. Worse still, those practices and policies are written in legalese that is too vague, confusing, and contradictory too secure meaningful consent. *See, e.g*, *Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024) ("a 'reasonable' user … is not … an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon to understand what he or she is consenting to.")

89. Nor did Plaintiff and the Wiretapped Class Members provide their prior consent to Defendant Pocket AI aiding, agreeing with, employing, permitting, or otherwise enabling the Third Parties' conduct.

90. Defendant Pocket AI intentionally recorded, and enabled and aided the recording of, the confidential communications of Class members without the consent of all parties to those communications.

91. Plaintiff and the Wiretapped Class Members have been injured by Defendant Pocket AI's violation of CIPA § 631(a) because the contents of their private conversations were disclosed to the Third Parties and the "disclosure of private information" is a type of "intangible harm" that satisfies Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Moreover, Cal. Penal Code § 637.2 provides a private right of action to "[a]ny person who has been injured by a violation of this chapter," which includes § 631(a). Under Cal. Penal Code § 637.2(c), "[i]t is not a necessary prerequisite to an action pursuant to [§ 637.2] that the plaintiff has suffered, or be threatened with, actual damages."

92. The wiretapping of Plaintiff and the Wiretapped Class Members occurred in California, where Plaintiff and Class Members used the device and where the Third Parties – as enabled by Defendant Pocket AI – routed Plaintiff's and the Wiretapped Class Members' electronic communications to the Third Parties' servers.

93. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant Pocket AI's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant Pocket AI's violations of CIPA § 631(a).

## COUNT II
## Violation of the California Invasion of Privacy Act
## Cal. Penal Code § 635

94. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

95. Plaintiff brings this claim individually and on behalf of the Classes.

96. California Penal Code § 635(a) prohibits any person from "manufactur[ing], assembl[ing], sell[ing], offer[ing] for sale, advertis[ing] for sale, possess[ing], transport[ing],

import[ing], or furnish[ing] to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another."

97. The Pocket AI device is a device "primarily or exclusively designed or intended for eavesdropping upon the communication of another" within the meaning of Cal. Penal Code § 635(a). As Defendant Pocket AI's own marketing makes clear, the device's primary and advertised purpose is to secretly record the telephone calls of others—including through a contact microphone designed to capture calls that a smartphone would otherwise prevent from being recorded, and including calls with unsuspecting third parties such as co-workers or opposing counsel. Indeed, its own ads explain that the reason to purchase the device instead of "just us[ing] an app" that comes preinstalled on smartphones for voice memos and notes is precisely because when using those apps "phone calls interrupt [*i.e.*, prohibit] recordings." *See* https://www.youtube.com/watch?v=sYRwYTNOdWo.

**Figure 25**




98. Defendant Pocket AI is a California corporation headquartered in San Francisco, California. Defendant Pocket AI manufactures, assembles, sells, offers for sale, advertises for sale, imports, and furnishes the Pocket AI device from and through its operations in California. Defendant

Pocket AI's manufacture, sale, offering for sale, advertising for sale, and furnishing of the device therefore occurred, and continues to occur, in California in violation of Cal. Penal Code § 635(a).

99. Defendant Pocket AI, a California company, designed, programmed, and operates the Pocket AI device and the systems through which the device's recordings are transmitted, processed, and shared. By designing and operating the device to record confidential communications and by transmitting and processing those recordings through its California-based systems, Defendant Pocket AI intentionally recorded, and enabled and aided the recording of, the confidential communications of Class members without the consent of all parties to those communications.

100. As discussed above, Defendants Accel, Y Combinator, Rauch, Staniszewski, and Nejatia were aware of the Pocket AI devices's design, operations, and functions when choosing to fund Defendant Pocket AI. By funding, supporting, and encouraging the aforementioned designing, operating, transmitting, and processing, Defendants Accel, Y Combinator, Rauch, Staniszewski, and Nejatian also intentionally recorded, and enabled and aided the recording of, the confidential communications of Class members without the consent of all parties to those communications.

101. Moreover, Cal. Penal Code § 637.2 provides a private right of action to "[a]ny person who has been injured by a violation of this chapter," which includes § 635.

102. Plaintiff and Class members have been injured by Defendants' violations of Cal. Penal Code § 635 because they paid for—and overpaid for—a device that Defendants were prohibited by law from selling, and that they would not have purchased, or would not have purchased at the price they paid, had they known that the device's primary advertised use was unlawful in their jurisdiction. Under Cal. Penal Code § 637.2(c), "[i]t is not a necessary prerequisite to an action pursuant to [§ 637.2] that the plaintiff has suffered, or be threatened with, actual damages."

103. Plaintiff and Class members are entitled to the greater of $5,000 per violation or three times the amount of actual damages, together with injunctive relief and other appropriate relief, pursuant to Cal. Penal Code § 637.2.

**<u>COUNT III</u>**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

104. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

105. Plaintiff brings this claim individually and on behalf of the False Advertising Class.

106. California's False Advertising Law ("FAL") makes it unlawful for any person, "with intent directly or indirectly to dispose of real or personal property … to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

107. Defendant Pocket AI, with the intent to sell its Pocket AI device, made and disseminated to the public—including over the Internet, on its Website, and in its advertising—statements concerning the device that were untrue or misleading.

108. Defendant Pocket AI marketed the device as a tool for recording telephone calls and conversations, including calls with third parties such as opposing counsel, and represented that the device offered consumers an "unfair advantage." Defendant Pocket AI's representations conveyed to reasonable consumers that the device was lawful to use for its advertised purpose of surreptitiously recording calls.

109. Defendant Pocket AI's representations were false and misleading because Pocket AI failed to disclose a material fact: that using the device for its primary advertised purpose—secretly recording calls without the consent of all parties—is unlawful in a dozen states, including California. Defendant Pocket AI's failure to disclose this material fact rendered its affirmative representations about the device misleading.

110. Further, on the Main Page of its Website, Pocket AI misleadingly advertises that "[y]our data is never sold or shared," that Pocket is "[b]uilt with privacy at its core, so your conversations stay yours," that "[o]nly your Pocket account can access them."[21] However this was false and misleading because Pocket AI's Privacy Policy admits users' conversations are "shared" with these third-party AI companies for "transcription/AI processing."[22] The Privacy Policy never clarifies whether users' private phone calls will later be used by those same AI companies for model

[21] Pocket AI, Privacy Policy, https://heypocket.com/pages/privacy (last accessed Aug. 18, 2026).

[22] *Id.*

training.[23] Worse still, Pocket AI admits that, even if a user "request[s] that we delete personal information," "content previously shared with others or with third-party integrations may persist with those recipients."[24]

111. Defendant Pocket AI's representations and omissions were material. A reasonable consumer would find it material to the decision to purchase a device that the device's primary advertised use is a crime in the consumer's state. Consumers would also find it material that the private conversations they recorded would be shared with third-party AI companies. Because these omissions were material, reliance on it is presumed as to Plaintiff and all members of the False Advertising Class. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009).

112. In addition, Plaintiff actually relied on Defendant Pocket AI's representations. Plaintiff saw Defendant Pocket AI's representations on its Website and in its advertising, which implied that the device was lawful to use to surreptitiously record calls, and Plaintiff purchased the device in reliance on those representations. Had Pocket AI disclosed that the device's primary advertised use is unlawful, Plaintiff would not have purchased the device.

113. As a direct and proximate result of Defendant Pocket AI's violations of the FAL, Plaintiff and the False Advertising Class members have suffered injury in fact and lost money or property, in that they purchased and paid for a device they would not have purchased, or would not have purchased at the price they paid, absent Pocket AI's misleading representations and material omission.

114. Plaintiff and the False Advertising Class members are entitled to restitution and injunctive relief pursuant to Cal. Bus. & Prof. Code § 17535, together with other appropriate relief.

**COUNT IV**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1770**

115. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

116. Plaintiff brings this claim individually and on behalf of the False Advertising Class.

[23] *See id.*

[24] *Id.*

117. Defendant Pocket AI violation Section 1770(a)(14) by "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that … are prohibited by law," by representing that purchasers could use its device for recording conversations without notifying the other party or parties to the conversation.

118. Defendant also violated sections 1770 (a)(5) and (a)(9) by advertising its "[recording device] goods and [transcription] services [as] hav[ing] … characteristics … that they do not have" and "with intent not to sell them as advertised." Pocket AI misleadingly advertises that "[y]our data is never sold or shared," that Pocket is "[b]uilt with privacy at its core, so your conversations stay yours," that "[o]nly your Pocket account can access them."[25] However this was false and misleading because Pocket AI's Privacy Policy admits users' conversations are "shared" with these third-party AI companies for "transcription/AI processing."[26] Pocket AI also admits that, even if a user "request[s] that we delete personal information," "content previously shared with others or with third-party integrations may persist with those recipients."[27]

119. As a result, Plaintiff and the False Advertising Class Members were harmed because, had they known such recordings were illegal under their state's law and/or that their private conversations would be shared with third-party AI companies, they would not have bought Defendant Pocket AI's device or would not have paid as much as they did for Pocket AI's device.

120. Defendant Pocket AI's representations were false and misleading because Pocket AI failed to disclose a material fact: that using the device for its primary advertised purpose—secretly recording calls without the consent of all parties—is unlawful in a dozen states, including California. Defendant Pocket AI's failure to disclose this material fact rendered its affirmative representations about the device misleading.

121. Defendant Pocket AI's representations and omissions were material. A reasonable consumer would find it material to the decision to purchase a device that the device's primary advertised use is a crime in the consumer's state. Because the omission was material, reliance on it

[25] Pocket AI, Privacy Policy, https://heypocket.com/pages/privacy (last accessed Aug. 18, 2026).

[26] *Id.*

[27] *Id.*

is presumed as to Plaintiff and all members of the Class. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009).

122. On behalf of himself and members of the Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages, and reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

123. Plaintiff and other consumers would consider purchasing Defendant Pocket AI's products at a reduced price, provided their device is modified to announce at the outset of any recording that "this call is being recorded for notetaking purposes" such that the other participants on the call know they are being recorded, that their continued participant would constitute assent, and that users of the product can rest assured they are not aiding and abetting Pocket AI in violating state wiretapping laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment against Defendants as follows:

a. For an order certifying the Class pursuant to Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

b. For an order declaring that Defendants' conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d. For an award of statutory damages to the extent available under Cal. Penal Code § 637.2;

e. For an award of restitution to the extent available, including under Cal. Bus. & Prof. Code § 17535;

f. For punitive damages, as warranted, in an amount to be determined at trial;

g. For injunctive and declaratory relief as necessary to protect the interests of Plaintiff and the Classes;

h. For prejudgment interest on all amounts awarded; and

i. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the proposed Class, demands a trial by jury on all claims and issues so triable.

Dated: November 5, 2026

**BURSOR & FISHER, P.A.**

By: /s/ *Stefan Bogdanovich*
Stefan Bogdanovich

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiff*